UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DONALD R. JONES, JR.,

    Plaintiff,

v.                                    Case No. 3:21cv487-MCR-HTC

B. CASH,
SERGEANT MOYE,
OFFICER DEREK BROWN,
OFFICER DAKOTA WALKER,
OFFICER RODERICK YOST,
OFFICER VANESSA ELY,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Donald R. Jones, Jr., filed a third amended civil rights complaint alleging deliberate indifference to his serious medical needs, excessive force, and failure to protect arising out of Defendants' response to Plaintiff's alleged seizure on March 30, 2019.[1]  ECF Doc. 37.  The matter was referred to the undersigned

---

[1] In the motion, Defendants state in a footnote that while Plaintiff "also claims that Defendants acted in 'deliberate indifference' to his medical needs, as 'first responders,'" it is clear Defendants are not medical personnel.  Therefore, according to Defendants they are treating Plaintiff's complaint solely as raising a claim of excessive force.  ECF Doc. 39 at 2, n.2.  Since Defendants make no substantive arguments regarding the deliberate indifference claim, the Court addresses only the excessive force claim.

Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  Pending before the Court is Defendants Cash and Moye's renewed motion for summary judgment[2], ECF Doc. 47, to which Plaintiff has responded, ECF Doc. 57.  Upon review and careful consideration, the undersigned recommends summary judgment be DENIED.

I.      **SUMMARY JUDGMENT STANDARD**

To prevail on their motion for summary judgment, Defendants must show Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 248 (1986) (emphases omitted).  An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the

---

[2] Defendants Cash and Moye originally filed a motion for summary judgment, ECF Doc. 39, relating to the second amended complaint, ECF Doc. 10.  Upon the Court granting Plaintiff's motion to file a third amended complaint, these Defendants filed a renewed motion for summary judgment, ECF Doc. 47, simply adopting all the arguments made in the initial motion.

Case No. 3:21cv487-MCR-HTC

outcome of the case. *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir. 1992).

Additionally, the Court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir. 1985)).

## II. FACTUAL ALLEGATIONS

In the sworn third amended complaint, Plaintiff alleges the following.[3] On March 30, 2019, Plaintiff was incarcerated at Century Correctional Institution ("Century CI"), and, at around 5:30 a.m. video captured Plaintiff suffering two "tonic-clonic seizures" while sleeping and he ended up on the floor between the bunks. ECF Doc. 37 at 6, ¶ 3. These seizures got the attention of fellow inmates who notified the dorm housing officer, Defendant Ely.

---

[3] Because the allegations are sworn, the Court will consider them as summary judgment evidence. *See e.g., Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) ("We also credit the 'specific facts' pled in plaintiff Caldwell's sworn complaint when considering his opposition to summary judgment."); *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015) ("[t]he Court may consider the original Complaint and Plaintiffs' other filings, including sworn statements, in evaluating the Amended Complaint").

Defendant Ely called for assistance stating that Plaintiff appeared to be having a seizure (see *id.* at ¶ 41), and Defendants Cash and Brown, two correctional officers, arrived together prior to medical personnel. Defendant Cash confronted Plaintiff, then grabbed his right wrist while placing his left hand on Plaintiff's right shoulder. *Id.* at ¶10. Cash decided to use physical force against Plaintiff, and, with Defendant Brown's help, dragged Plaintiff to the open walkway, lifting him up in the process and slamming him to the ground. *Id.*

Once Plaintiff was on the ground, Defendants placed their hands on the back of Plaintiff's neck and they used knees and body weight to forcibly restrain Plaintiff. Defendant Brown placed his knee on the back of Plaintiff's head and neck, smashing his face against the floor while Defendant Cash sat on Plaintiff's lower back while holding his wrists. Plaintiff has another seizure as his whole body goes rigid, and Defendants Cash and Brown continued to use knees and body weight to forcibly restrain Plaintiff.

Defendants Moye and Walker then arrived and immediately became active participants in the use of force already being applied by using hands, knees and body weight to forcibly restrain Plaintiff. *Id.* at ¶ 15 and 18. Defendant Yost also arrived prior to medical personnel and did "not try to stop the ongoing excessive use of force being applied by Defendants Cash, Brown, Moye and Walker." *Id.* at ¶ 20.

Case No. 3:21cv487-MCR-HTC

Eventually, Defendant Brown placed his knee on the back of Plaintiff's right shoulder and triceps area, grabbed Plaintiff's right arm with both of his hands, and forced his arm behind his back in order to be handcuffed. He did so with sufficient force to "fracture and dislocate Plaintiff's right elbow and also tear tendons and / or ligaments in his arm requiring surgical intervention to be repaired." ECF Doc. 37 at 8, ¶ 17. He also suffered "lacerations and abrasions to head and forehead, both eyes blackened, swollen right jaw and right ear." *Id.* at ¶ 22. He required several medical treatments and eventually surgery and painful physical therapy. He now has "a chronic injury and a permanent disability to his dominant right arm after this use of force applied by the Defendants." *Id.* at 31.

Plaintiff alleges he was "suffering the effects of an epileptic attack and that any alleged resistance or combativeness towards any defendant was not an intentional or purposeful act." *Id.* at ¶ 21. Also, he "has suffered many seizures prior to this incident and has medical documentation from North Okaloosa Medical Center in Crestview, FL., to show at least one previous occurrence." *Id.* at ¶ 28. Plaintiff attached the medical records at ECF Doc. 57 at 20. Also, on August 24, 2019, while housed in the infirmary at Century CI, he suffered another tonic-clonic seizure in his sleep, which was witnessed and documented by FDOC staff. ECF Doc. 57 at 26.

## III. ANALYSIS

The "core judicial inquiry" for an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "This standard requires a prisoner to establish two elements—one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Hudson*, 503 U.S. at 7).

For the subjective element, the Eleventh Circuit identified five factors set out by the Supreme Court in *Whitley v. Albers*, 475 U.S. 312 (1986) to evaluate whether force was applied maliciously or sadistically: (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting *Whitley*, 475 U.S. at 321). For the objective element, courts focus on "whether the official's actions were harmful enough or sufficiently serious to violate the Constitution." *Sconiers*, 946 F.3d at 1265.

It is well settled that at the summary judgment stage, the Court cannot make credibility determinations and must instead review the facts in the light most favorable to the non-moving party. *See e.g., Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations [at summary judgment]; the non-movant's evidence is to be accepted for purposes of summary judgment."). Under that standard and applying the *Whitley* factors, the undersigned finds questions of material fact exist as to whether Defendants used more force than necessary to restrain Plaintiff.

First, there is a material question of fact whether Plaintiff was having a seizure or was under the influence and whether Defendants should have known or considered the possibility Plaintiff was having a seizure. Although Defendant Ely requested assistance "due to an inmate that was allegedly having a seizure", *see* Cash Decl., ECF Doc. 39-1 at ¶ 3; Moye Decl., ECF Doc. 39-2 at ¶ 3; Ely Incident Report, ECF Doc. 39-7 at 1, Defendant Cash believed Plaintiff was under the influence based on his experience and Plaintiff's conduct. *See* Cash Decl., ECF Doc. 39-1 at ¶ 5; *but see,* Disciplinary Report, ECF Doc. 57 at 35 (wherein Cash states Plaintiff "appeared to be having a seizure" when he arrived). Whether Plaintiff was having a seizure or was being "combative", as Defendants contend, affects whether the force used was more than necessary to maintain order. *See Fera v. City of Albany,* 568 F. Supp. 2d

248, 254 (N.D.N.Y. 2008) ("Officers' awareness of information about a suspect's vulnerability due to a medical condition obviously is a circumstance that is relevant to the reasonableness of a particular use of force. Therefore, crediting the testimony of Robert Austin and/or Plaintiff, a reasonable jury is not [] precluded from finding that the officers' actions—placing Plaintiff, alone and handcuffed, in the police wagon without having made any effort to consult a medical authority—failed to be objectively reasonable.").

Second, the parties' description of the amount of force used differs. As stated above, Plaintiff alleges he was "slammed" on the ground and that the Defendants used so much force when they pulled his arm back that they "fracture[d] and dislocate[d] Plaintiff's right elbow" and tore the "tendons and / or ligaments in his arm requiring surgical intervention to be repaired." ECF Doc. 37 at 8.

Defendants, on the other hand, contend only the necessary amount of force was used. Defendants admit Cash put a custodial hold on Plaintiff and attempted to roll him over on to his stomach for hand restraints to be applied. Moye's Decl., ECF Doc. 39-2. They admit Cash pinned Plaintiff down with his body weight, while Brown attempted to gain control of Plaintiff's upper extremities, including using his body weight to secure Plaintiff's left arm behind his back. *Id.* at ¶ 13. When Defendant Moye arrived he assisted the others in trying to gain a hold on Plaintiff's upper left extremity and securing it behind Plaintiff's back. ECF Doc. 39 at 6. Moye

admits to using his bodyweight as well so that Cash could place Plaintiff in hand restraints. After hand restraints were applied, Defendants allege Plaintiff continued to kick his legs, causing Cash, Moye, and Brown to use their body weight to secure Plaintiff's legs. *Id.*

Defendants' recitation does not include any slamming of Plaintiff on the floor. It also does not include any description of conduct that would have been sufficient to cause the type of injury Plaintiff claims to have incurred. While the extent of the injury alone is not determinative – it is one factor the Court considers in determining whether the force used was excessive. Here, the extent of the injury was severe and the Court cannot say that a reasonable jury would not find that the use of force here was excessive. *See Hudson,* 503 U.S. at 5 (citing *Whitley*, 475 U.S. at 321) (Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been necessary" in a particular situation, "or instead evidenced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing violation that it occurred."). Thus, the facts of this case are unlike the facts in *Smith v. Sec'y, Dep't of Corrs.*, 524 F. App'x 511 (11th Cir. 2013) and *Howard v. Memnon*, 572 F. App'x 692 (11th Cir. 2014) where the courts found a lack of serious injury. *See Smith*, 524 F. App'x at 512-14; *Howard*, 572 F. App'x at 695.

Given these disputes of fact, the undersigned recommends the motion for summary judgment be denied. *See Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (affirming denial of summary judgment because under plaintiff's version "a reasonable jury could conclude that [defendants] applied force maliciously and sadistically rather than in a good-faith effort to restore or maintain order"). This is not a case, like in *Howard*, where the Defendants have submitted video evidence to the Court that blatantly contradicts Plaintiff's version of events, such that it cannot be believed.[4]

Finally, Defendants also argue they "are entitled to qualified immunity, because they were acting pursuant to their authority as correctional officials, and their conduct was reasonable under the circumstances." ECF Doc. 39 at 13. Qualified immunity protects government officials acting within their discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Rogers v. Miller,* 57 F.3d 986, 988 (11th Cir. 1995).

To fall under qualified immunity protection, a defendant must first establish that he was acting within his discretionary authority, and if the defendant does so

---

[4] It appears video evidence exists as both parties reference it in their submissions. Presumably, this evidence is not conclusive as neither party has submitted it to the Court for review.

successfully, "the burden then shifts to the plaintiff to show that qualified immunity is not appropriate." *Pearson v. Callahan*, 555 U.S. 223 (2009). When evaluating a claim for qualified immunity, a court must determine (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right, and (2) whether, under the facts alleged, there was a violation of "clearly established law." *Id*. Courts are not required to address the two prongs of this test in any order. *Id*. As discussed above, because there is a material issue of fact as to whether Defendants used more force than was necessary to restrain Plaintiff, the undersigned does not find on summary judgment that Defendants are entitled to qualified immunity. *See Bowden*, 576 F. App'x at 955 ("because a reasonable jury could find [defendants] violated [plaintiff]'s Eighth Amendment rights, [defendants] are not entitled to qualified immunity").

## IV.  CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1. Defendant Cash and Moye's motion for summary judgment, ECF Doc. 47, be DENIED.

2. This case be referred back to the Magistrate Judge for further pretrial proceedings.

Case No. 3:21cv487-MCR-HTC

At Pensacola, Florida, this 20th day of May, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.